Jackson v. Sharpe's Administrator.

*W. Morrow, R. M. Goodwin* and *W. H. Hay,* for appellant.
*L. Sexton,* for appellee.

———————⚫———————

## JACKSON *v.* SHARPE's Administrator.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—A new trial is rarely, if ever, granted on the ground of newly discovered evidence, where the new evidence only tends to impeach the credibility of witnesses who were examined upon the trial.

APPEAL from the *Vermillion* Common Pleas.

ELLIOTT, J.—*Richard Potts,* as administrator of *Mary Ann Sharpe,* deceased, sued *Jackson* for $1,100, on an account for

goods sold and delivered, and for money loaned to him by the decedent in her lifetime. *Jackson* answered by a general denial, and also a special paragraph, in which he admitted the receipt of $433, from and on account of the decedent, but alleged that he had more than repaid the same in money, goods, provisions, &c., furnished to and purchased for her, and at her request, leaving a balance due him of $112 45; an account of which was filed as a set-off. To which the plaintiff replied by a denial. A trial by jury resulted in a verdict for the plaintiff for $350, for which judgment was rendered.

On the trial of the cause, one *Ann Jones* was introduced as a witness by the plaintiff, and, among other things, testified that after the death of Mrs. *Sharpe*, *Jackson* told her that he then had $600 of Mrs. *Sharpe's* money. *Isaac Curgill*, another witness for the plaintiff, testified that he had a conversation with *Jackson*, in which he told the latter that people were saying that Mrs. *Sharpe* was living off of his (*Jackson's*) money; to which *Jackson* replied, "It is a lie; I have $600 of her money now, and will swear to it." *Jackson*, who was required by the court to testify as a witness, admitted the receipt of $433 of Mrs. *Sharpe's* money, but testified that he had paid the same in the manner stated in his set-off; that on the 1st of *August*, 1866, they had a settlement of their accounts, in which there was found a balance due him of twenty-five cents, and that he afterwards furnished her money, goods, provisions, &c., as stated in his account, to the amount of $112 45, which remained unpaid. He expressly denied having made the statements to *Ann Jones* and *Isaac Curgill*, sworn to by them.

Mrs. *Sharpe* died in *November*, 1866, and the judgment was rendered against *Jackson* at the *May* term of the court, 1867. On the 5th of *September*, 1867, *Jackson* filed a complaint, under section 356 of the code, for a new trial in said cause. The complaint, after setting out the proceedings in the cause, and the evidence given on the trial, alleges that at the time of the trial he was greatly surprised by the

evidence of *Ann Jones* and *Isaac Curgill*, and did not then know of any "rebutting testimony to counteract its influence over the jury;" that their said statements were utterly false, and that after the close of the term at which the judgment was rendered, he discovered, for the first time, that he could prove by *Joseph Simpson, James Hendrixson,* and *William French,* as he verily believed, that said *Ann Jones* and *Isaac Curgill,* during the summer of 1866, agreed and confederated together to injure him (*Jackson*) in any manner in their power, and to swear falsely against him in the event of a law suit in which he should be a party. The complaint is sworn to, and is accompanied by the affidavits of *Simpson, Hendrixson* and *French.*

*Simpson* states in his affidavit that during the summer of 1866, *Isaac Curgill* requested the affiant to join him in a suit against *Jackson,* and declared "that *Jackson* had sworn falsely against him in a suit between them, and that he would pay *Jackson* in the same coin."

*Hendrixson* swears that during the summer of 1866, "he heard *Isaac Curgill* say that he intended to injure *Jackson,* and break him up, somehow or another; that *Jackson* had sworn falsely against him, and he would pay him back in his own coin."

*French* and *Simpson,* in a joint affidavit, state that during the spring of 1866, they were at the house of *George Jones,* the husband of said *Ann Jones,* and in conversation said *Ann Jones* "declared that *Jackson* was getting her sister's (Mrs. *Sharpe's*) property ; that she (*Ann*) was determined to stop him; that she would ruin him if she could, and would stoop to anything to accomplish her purpose; that the property should never do him any good."

The court sustained a demurrer to the complaint, and refused to grant a new trial, to which *Jackson* excepted, and appeals here.

We think there was no error in the ruling of the court below. The newly discovered evidence could have no bearing on the merits of the controversy between the par-

ties. It would not contradict or disprove the statements of *Curgill* and *Ann Jones.* Its only object and effect would be to impeach the credibility of those witnesses. New trials are rarely, if ever, granted for such a purpose. This is the general rule. *McIntire* v. *Young,* 6 Blackf. 496; *Elliott* v. *Adams,* 8 *id.* 103; *Porter* v. *The State,* 2 Ind. 435; *Bland* v. *The State, id.* 608; *Fleming* v. *The State,* 11 *id.* 234; *The State, &c.* v. *Clark,* 16 *id.* 97. We see nothing in this case to make it an exception to the general rule.

Judgment affirmed, with costs.

*B. E.* and *M. G. Rhoads,* for appellant.

*W. Egleston* and —— *Harvey,* for appellee.