Tholke v. The State, ex rel. Hunt.

THOLKE v. THE STATE, EX REL. HUNT.

PRACTICE.—*Waiver of Objection.—Jurisdiction.*—In a prosecution for bastardy, the venue was changed, on the application of the defendant, from the court of common pleas of Ohio county to the court of common pleas of Dearborn county, and afterward, the court of common pleas having been abolished and its business transferred to the circuit court, the papers were returned from the Dearborn Circuit Court to the Ohio Circuit Court upon its order, for what reason did not appear, and the defendant appeared in the Ohio Circuit Court and again applied for a change of venue, procured a continuance, and afterward went to trial without objection.

*Held*, that he acquiesced in the return of the papers, and could not afterward object to the jurisdiction of the Ohio Circuit Court.

NEW TRIAL.—*Surprise.*—In the absence of fraud and trickery, a party cannot claim to have been surprised at the introduction of competent evidence tending to corroborate other competent evidence as to the existence of material facts alleged by his adversary.

SAME.—*Newly-Discovered Evidence.—Admissions.— Bastardy.— Parties.*—The admissions of the relatrix in a bastardy proceeding cannot be introduced in evidence as the admissions of a party, but only for the purpose of impeachment, and therefore cannot, as newly-discovered evidence, constitute a cause for a new trial.

From the Ohio Circuit Court.

*J. R. Troxell*, for appellant.

*J. C. Denny*, Attorney General, and *R. L. Davis*, Prosecuting Attorney, for appellee.

WORDEN, J.—Prosecution of the appellant for bastardy. Trial by jury, verdict of guilty, and judgment over motions by the defendant for a new trial and in arrest.

Error is assigned upon the overruling of the motion in arrest of judgment; and it is also assigned for error that the court had no jurisdiction of the subject-matter.

These assignments are based upon the following facts, as shown by the record: The cause came regularly into the court of common pleas of Ohio county, and was there pending on April 9th, 1872, when, on the application of the defendant, the venue was ordered to be changed to the Dearborn Court of Common Pleas, and the clerk was directed to transmit the papers, etc., the defendant first paying the costs occasioned by

the change, and the change was to be perfected within ten days from that date. Afterward, on June 24th, 1873, the court of common pleas in the meantime having gone out of existence, and the business thereof having gone into the circuit court, the Ohio Circuit Court, then in session, ordered the clerk of the Dearborn Circuit Court to send back the papers in the cause to said Ohio Circuit Court. The papers were sent back accordingly, and on July 15th, 1873, the cause, by order of the latter court, was docketed for trial therein. On the same day, the defendant appeared and again applied for a change of venue, but his motion was overruled, and he excepted. No point is made, however, upon the overruling of this motion for change of venue. At the October term, 1873, of the court below, the parties appeared and elected to try the cause by a jury. The cause was continued at the same term, on the application of the defendant, to the next term of the court. At the January term, 1874, the parties appeared, entered upon the trial of the cause without objection, the trial resulting as before stated.

We are not advised by the record or otherwise upon what ground the court ordered the papers sent back from the Dearborn to the Ohio Circuit Court, but whatever it may have been, the defendant must be deemed to have acquiesced in the action of the court; for he not only did not object thereto, but he appeared to the action in the latter court after the papers had been sent back, again applied for a change of venue, procured a continuance, and finally went to trial without objection. The case stands as if there had been an express agreement of the parties that the venue should be changed back from the Dearborn to the Ohio Circuit Court. The latter court had jurisdiction in bastardy cases, and the consent of the parties gave it jurisdiction of this particular case. There is no foundation for the assignment of error which we have been considering.

We come to that based upon the overruling of the motion for a new trial. Two grounds are urged here upon which it

is claimed that a new trial should have been granted, viz., surprise and newly-discovered evidence.

The relatrix testified that the defendant was the father of her bastard child; that it was begotten about the 20th of March, 1871, at the town of Milton, in Ohio county, where the relatrix then resided; that the defendant then resided in the town of Dillsboro, about five miles distant; that the child was begotten at the back end of a blacksmith shop, after dark, but not very late. She testified that she was standing at her father's gate, at home, in Milton, when the defendant came along, and after talking awhile at the gate, she went along with him to the blacksmith shop.

William Hunt, the father of the relatrix, testified that he was at home on or about the 20th of March, 1871, when the defendant came past his house in Milton; that he stopped at the gate and talked awhile with himself and his daughter; that after talking awhile he, the witness, went into the house, leaving his daughter and the defendant at the gate; that it was after dark.

The defendant testified as a witness, and, amongst other things, denied that he was the father of the child, and that he had ever had connection with the relatrix. He stated that he did not see the relatrix on the 20th of March, 1871, that he remembered of; that he knew he had no conversation with her on that evening; that he was in Milton that evening, but that he started to go to his home in Dillsboro, about five miles distant, and arrived home between six and seven o'clock in the evening.

This portion of the evidence has been stated in order to an understanding of the questions involved.

The appellant made an affidavit that he was surprised by the evidence of William Hunt, above set out; that Hunt had not been subpœnaed as a witness or brought into court until the day he testified; that he was an idler and a vagabond, having deserted and abandoned his family for a number of years, and having left them without support or protection, and that he was not a resident, for some time, of the county in which his

family resided; that if the appellant had suspected that the witness would have testified as he did, he, the appellant, would have been able to refute and overthrow his statements by the introduction of other evidence.

There was clearly no such case of surprise as the law will relieve against. The examination of the relatrix before the magistrate was on file, in which she stated that the child was begotten on or about the 20th of March, 1871, in the town of Milton, near the blacksmith shop mentioned, after night. The defendant had full notice of the time and place when and where the relatrix claimed that the child was begotten. He must be presumed to have known that any evidence would be competent, and might be introduced, that would tend to corroborate her evidence. No fraud or trickery calculated to mislead the appellant is alleged to have been practised. The fact that the witness had not been subpœnaed or brought into court until the day he testified is of but little importance. Witnesses are thus brought in to testify very frequently. The statements as to the character of the witness can have but little or nothing to do with the question here involved.

We proceed to the other ground, the newly-discovered evidence. The appellant filed his affidavit stating that he expected to be able to prove by Armor Abden that the appellant was in the town of Dillsboro, five miles distant from Milton, at seven o'clock, on the evening of March 20th, 1871. This is but cumulative of the appellant's own testimony on the same subject. The affidavit also states that the appellant had discovered after the trial that he could prove by one David Jones, who was an acquaintance of the relatrix, that she had stated to him, in a conversation between them, held about January 15th, 1872, that the appellant was not the father of the child; that the reason she charged the appellant with the paternity of the child was, because he was worth something, and the father of the child was a young man who was too poor to pay anything, and she was going to lay it to some person who could pay for it. The affidavit of Jones to the same effect was also filed.

It seems to us, upon an examination of the affidavit, that

sufficient diligence is shown. The question is therefore presented, whether this evidence thus newly-discovered is sufficient to entitle the appellant to a new trial. In the conflicting state of the evidence on the trial, it would seem quite probable that had the evidence of Jones been introduced, it would have changed the result. But the question arises, for what purposes could the evidence of Jones be introduced? If it could be introduced as the admission of the relatrix, like the admission of any other party to an action, then it would seem that a new trial should have been granted, in order that the defendant might have the benefit of the admission. The writer of this opinion, and one other member of the court, PETTIT, J., are of the opinion that the relatrix in a bastardy prosecution is so far a party to the action that her admissions as such may be given in evidence against her, like admissions of other parties. A majority of the court, however, are of a different opinion. A majority hold that the relatrix is not a party, and that her admissions cannot be given in evidence as such on the trial. It follows, from the views of a majority of the court, that the statements of the relatrix to Jones could only be given in evidence to impeach her, by showing statements made by her out of court at variance with her evidence in court. But a new trial will seldom, if ever, be granted for the purpose of impeachment. *The State* v. *Clark,* 16 Ind. 97; *Jackson* v. *Sharpe's Adm'r,* 29 Ind. 167; *Martin* v. *Garver,* 40 Ind. 351.

We see nothing in this case that should take it out of the general rule.

The judgment below is affirmed, with costs.